IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FREEPORT GAS COAL TRUST,

     Plaintiff,

  v.                          CIVIL ACTION NO. 1:21CV123
                                         (KLEEH)

HARRISON COUNTY COAL RESOURCES, INC.,

     Defendant.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

On April 14, 2021, the plaintiff, Freeport Gas Coal Trust ("Freeport"), filed a declaratory action against the defendant, Harrison County Coal Resources, Inc. ("Harrison"), in the Circuit Court of Doddridge County, West Virginia seeking to compel its compliance with a 1965 coal mining lease [see ECF Nos. 1-1; 1-3]. Harrison timely removed the case to this Court based on diversity of citizenship [ECF No. 1].

Now pending are the parties' cross motions for summary judgment. For the reasons that follow, the Court **GRANTS** Harrison's motion and **DENIES** Freeport's motion.

## I.    Background

For purposes of summary judgment, the Court "view[s] the evidence in the light most favorable to the non-moving party" and refrains from "weighing the evidence or making credibility

FREEPORT GAS COAL TRUST V.                              1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

determinations." Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th

Cir. 2017) (quoting Jacobs v. N.C. Admin. Off. of the Cts., 780

F.3d 562, 568-69 (4th Cir. 2015)).  Here, however, the essential

facts are largely undisputed.

**A.   Factual History**

This case relates to a lease entered on August 1, 1965 ("the

Lease"), under which Sewell River Coal & Land Corporation leased

a tract of land to Consolidation Coal Company for the operation of

a coal mine [See ECF No. 39-1].  Freeport is the current lessor[1]

and Harrison is the current lessee[2] of this Lease [ECF Nos. 39 at

6, n.1; 52 at 2, n.2].  The leased premises consist of more than

3,000 acres located in Doddridge and Harrison Counties [ECF No. 39

at 6; 39-11 at 4].

The Lease grants the lessee the right to mine and sell "all

of the Pittsburgh or nine foot vein or seam of coal" on the leased

premises [ECF No. 39-1 at 1-2].  It renews automatically for

---

[1] On August 10, 1983, Sewell River Coal & Land Corporation merged with Freeport
Gas Coal Company, with Freeport Gas Coal Company as the surviving entity [ECF
Nos. 39 at 6, n.1; 52 at 2, n.1].  In late 1986, Freeport Gas Coal Company
dissolved after creating the Freeport Gas Coal Trust ("Freeport") and assigning
all assets to it.  Id.
[2] Consolidation Coal Company assigned its interest to Murray Energy Corporation,
which in turn assigned the Lease to Harrison County Coal Company, one of its
subsidiaries [ECF Nos. 39 at 6; 52 at 2, n.2].  When Murray Energy Holdings
filed Chapter 11 bankruptcy in October 2019, American Consolidated Natural
Resources, Harrison's parent corporation, acquired substantially all of Murray
Energy Holding's assets, including in interest in the Lease [ECF Nos. 39 at 6;
39-3 at 1; 39-10 at 8-9].

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

twenty-year periods until "all merchantable or practicably and economically mineable coal" has been removed, so long as the lessee has complied with its terms.  Id. at 2.

Before mining, the lessee must provide the lessor a "general plan for mining and removing the leased coal" before mining and must notify the lessor of any revisions to this plan.  Id. at 3. The "dispatch, diligence and expediency in which such mining operations may thereafter be carried out shall be at the pleasure of the Lessee."  Id. at 4.  The Lease also requires the lessee to mine coal "according to suitable methods of modern mining;" to provide a map of the mining operations; provide monthly reports to the lessor regarding the number of tons of coal mined, shipped, and sold from the leased premises; and pay all taxes and assessments.  Id. at 4-6.  Further, the lessor must pay the lessor a royalty of eleven cents ($0.11) per net ton of coal produced and a $4,000 annual royalty "as a minimum annual rental . . . whether or not Lessee mines any coal during that year. . . ."  Id. at 6-7.  The Lease does not require the lessee to mine any coal "that in its opinion is not merchantable or practicably and economically mineable" and its judgment as to whether coal is merchantable or economically mineable "exercised in good faith, [is] binding and conclusive upon the parties. . . ." Id. at 4.

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

Harrison and its predecessors have operated the Harrison County Coal Mine near the leased premises for approximately sixty (60) years [ECF Nos. 39-2 at 1; 52 at 4-5]. Harrison owns the mineral rights to the surrounding properties and uses longwall mining to expand its underground mining operations over time [ECF Nos. 39-6 at 1; 39-9 at 1; 52 at 4-6]. It expects to continue mining at the Harrison County Coal Mine for the next forty (40) to fifty (50) years [ECF No. 39-2 at 1].

The Harrison County Coal Mine is located twelve (12) miles from the leased premises [ECF Nos. 39-8 at 1; 39-9 at 1; 39-10 at 8]. Since the 1960s, Harrison has mined roughly 22,000 acres and has moved approximately seven (7) miles closer to the leased premises [ECF Nos. 39-4 at 1; 39-9 at 1; 42-1 at 4-6; 52 at 4-5]. But none of Harrison or its predecessors have mined the leased premises [ECF Nos. 39 at 7; 39-2 at 1; 39-10 at 14; 52 at 5-7]. Hence, none of these entities has paid the eleven cent ($0.11) per ton production royalty provided in the Lease. Id. Harrison has never placed equipment on the leased premises and has never independently evaluated its coal reserves [ECF Nos. 39-7 at 1; 39-10 at 7-8]. Instead, it has relied on its predecessor's data and has evaluated the leased premises as a part of its asset portfolio [ECF No. 39-2 at 1].

4

FREEPORT GAS COAL TRUST V.                          1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

According to Harrison, longwall mining connected to its current operations is the most economical and practical way to mine the leased premises as the property is too small to support a standalone mine [ECF Nos. 42-1 at 5-7; 52 at 6-7].[3] "Given the remote location of the Leased premises and the overall lack of development and access to transportation, Harrison has not yet reviewed the Leased premises for if and when mining might commence under Harrison ownership" [ECF No. 52 at 5]. It nevertheless anticipates expanding its existing operations to reach the leased premises within the next twenty (20) to thirty (30) years [ECF Nos. 39-2 at 1; 42-1 at 7-8; 52 at 7].

Harrison concedes that it has not prepared a mining plan for the leased premises but asserts that this is because expansion onto the property has never been part its development plan [ECF Nos. 39-10 at 14; 52 at 7]. Although it has not mined the leased premises, based on its predecessor's core hole data, Harrison has classified 1850 acres of the leased premises as a mineable reserve and has paid the property taxes levied for such designation [ECF Nos. 39-7 at 1; 39-12]. Moreover, Harrison has paid Freeport the $4,000 minimum annual royalty [ECF Nos. 39-5 at 1; 39-10 at 9-10,

---

[3] Freeport disputes that the leased premises could not support a standalone mine [ECF No. 43 at 3] but has produced no evidence to the contrary.

FREEPORT GAS COAL TRUST V.                              1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

33-34].   According to Freeport, it has adopted a policy of not
accepting Harrison's payments.   See ECF No. 37-2 at 4 ("Given
Harrison's alleged breach of the 1965 Coal Lease, it has been
[Freeport's] policy to not cash these checks; however, one or more
checks may have been inadvertently cashed.").

**B.   Procedural History**

Due to the lack of mining on the leased premises, on April
14, 2021, Freeport filed a declaratory action against Harrison in
the Circuit Court of Doddridge County, West Virginia, asserting
three causes of action [see ECF No. 1-1].   First, Freeport alleged
that Harrison had breached its duty to diligently mine the leased
premises and sought a judgment compelling Harrison to commence
mining operations within six (6) months.   Id. at ¶¶ 20-31.   Second,
it contended that the Lease's royalty rate was unconscionably low
and requested reformation.   Id. at ¶¶ 32-39.   Finally, Freeport
asserted that Harrison had abandoned the Lease.   Id. at ¶¶ 40-43.
Harrison timely removed the case to this Court [ECF No. 1].

Following the conclusion of discovery, the parties filed
cross motions for summary judgment [ECF Nos. 37; 38].   Freeport
argues that it is entitled to summary judgment on the issues of
breach of the implied duty to mine and abandonment [ECF No. 39].
Harrison conversely contends that it is entitled to summary

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

judgment on all of Freeport's claims [ECF No. 52]. As these motions are now fully briefed and ripe for review, the Court turns to address the issues raised in each.

## II.  **Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Accocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson,

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

477 U.S. at 256.  The "mere existence of a scintilla of evidence"
favoring the non-moving party will not prevent the entry of summary
judgment; the evidence must be such that a rational trier of fact
could reasonably find for the nonmoving party.  Id. at 248-52.

"When faced with cross-motions for summary judgment, the
court must review each motion on its own merits 'to determine
whether either of the parties deserves judgment as a matter of
law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003)
(quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n. 4
(1st Cir. 1997)).  The same standards of review apply when both
parties file motions for summary judgment.  See ITCO Corp. v.
Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The
court is not permitted to resolve genuine issues of material facts
on a motion for summary judgment — even where . . . both parties
have filed cross motions for summary judgment").

### III. Discussion

**A.  Harrison Has No Implied Duty to Mine the Leased Premises
Within a Reasonable Amount of Time**

The Court first addresses the parties dispute as to whether
West Virginia law imposes an implied duty upon Harrison to mine
the leased premises within a reasonable amount of time.  Freeport
contends that it does, and that Harrison has breached this duty
[ECF No. 39 at 12-14]; while Harrison asserts that no implied duty

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

exists where the Lease expressly addresses the diligence with which
it must commence mining [ECF No. 52 at 10-13].

### 1.   Section 6 of the Lease Prohibits the Application of the Implied Covenant

Under West Virginia law, "[t]here is an implied covenant by
the lessee to begin mining within a reasonable time." Horse Creek
Coal Land Co. v. Trees, 84 S.E. 376, 378 (W. Va. 1915).  The
presence of an inconsistent express term or provision on the same
subject matter in a contract, however, "excludes the possibility
of an implied covenant of a different or contradictory nature."
Frederick Bus. Props. Co. v. Peoples Drug Stores, Inc., 445 S.E.2d
176, 182 (W. Va. 1994).  Thus, where a lease contains a specific
provision related to the timeliness of development the law does
not infer a duty to operate with reasonable diligence.  That is
the precisely the situation presented in this case.

Section 6 of the Lease states: "[t]he commencement of mining
operations hereunder and the dispatch, diligence and expediency in
which such mining operations may thereafter be carried out, shall
be at the pleasure of the Lessee" [ECF No. 39-1 at 4].  This
provision delegates decisions related to the timeliness of mining
the leased premises to Harrison and it contemplates that there
might be a delay in mining.  The implied covenant to mine within
a reasonable time cannot supersede this express term of the

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

---

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

parties' contract.  <u>Frederick</u>, 445 S.E.2d at 182.

Freeport contends that the implied covenant nevertheless applies in this case because Section 6 (1) contradicts other provisions in the Lease, (2) is ambiguous, (3) is a discretionary term which impacts the other party's rights under the Lease [ECF No. 39 at 14-15].  Each of these arguments lacks merit.

**a.   Section 6 Is Not Contradictory**

According to Freeport, Section 6 is contradictory because "[i]n several places the Lease has mandatory mining coal language" [ECF No. 39 at 14].  This is not so.  While several lease terms impose mandatory obligations upon Harrison, none compel mining. Instead, these provisions relate to how Harrison is to conduct mining and to what information or payment Freeport is entitled. <u>See</u> ECF No. 39-1.[4]

---

[4] For example, the Lease provides that:

- "The Lessee shall furnish to the Lessor, prior to the beginning of mining hereunder, a general plan for mining and removing the leased coal."
- "The Lessee shall mine the coal herein leased according to suitable methods of modern mining."
- "Upon the commencement of mining operations hereunder Lessee shall employ a competent mining engineer to make . . . a 'mine map'. . . ."
- "The Lessee shall pay to the Lessor as rent a royalty of eleven cents ($0.11) on each and every net ton of 2,000 pounds of coal hereby leased which is mined and sold and shipped from said premises."
- "On or before the twentieth (20th) day of each month after coal is first mined from the leased premises the Lessee shall make a report to the Lessor showing the number of net tons of 2,000 pounds of coal mined and sold and shipped from the leased premises. . . ."

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

The Lease also states that Harrison is not required to mine any coal "that in its opinion is not merchantable or practicably and economically mineable." Id. at 4.  Despite Freeport's contention otherwise, this provision does not impose an inverse obligation upon Harrison to immediately mine coal that is merchantable and economically mineable.  Section 6 therefore does not contradict any of these mandatory obligations which do not compel mining and are contingent upon imminent or ongoing mining on the leased premises.

**b.   Section 6 is Unambiguous**

Freeport next asserts that the phrase "at the pleasure of the Lessee" is "an ambiguous clause with no definite meaning" [ECF No. 43 at 4].  The Court agrees with Harrison, however, that the phrase "at the pleasure of the Lessee" clearly states the parties' intent to vest the lessee "with the sole discretion to determine when to commence mining of the coal on the leased premises" [ECF No. 44 at 3].

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or [interpretation] but will be applied and enforced according to such intent."  Syl. Pt. 1, Cotiga Dev. Co.

[ECF No. 39-1 at 4-5, 7].

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

v. United Fuel Gas Co., 128 S.E.2d 626, 628 (W. Va. 1962). "It is
not the right or province of a court to alter, pervert or destroy
the clear meaning and intent of the parties as expressed in
unambiguous language in their written contract or to make a new or
different contract for them." Syl. Pt. 3, Id.  In other words,
"[w]here the terms of a contract are clear and unambiguous, they
must be applied and not construed." Bethlehem Mines Corp. v.
Haden, 172 S.E.2d 126, 126 (W. Va. 1969).

Whether a contract is ambiguous is a question of law to be
determined by the court.  Syl. Pt. 1, Berkeley Cnty. Pub. Serv.
Dist. v. Vitro Corp. of Am., 162 S.E.2d 189, 191 (W. Va. 1968).
"The mere fact that parties do not agree to the construction of a
contract does not render it ambiguous." Id.  Rather, a contract is
considered ambiguous where the agreement's terms are inconsistent
on their face, or its language is "reasonably susceptible of two
different meanings or . . . of such doubtful meaning that
reasonable minds might be uncertain or disagree as to its meaning."
Haynes v. DaimlerChrysler Corp., 720 S.E.2d 564, 568-69 (W. Va.
2011) (citing Syl. Pt. 6, State ex rel. Frazier & Oxley, L.C. v.
Cummings, 569 S.E.2d 796 (W. Va. 2002)); Syl. Pt. 4, Estate of
Tawney v. Columbia Natural Res., L.L.C., 633 S.E.2d 22 (W. Va.
2006).

FREEPORT GAS COAL TRUST V.                              1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

Section 6 of the Lease is clear and unambiguous. It demonstrates the parties' intent to give the lessee sole discretion over the timeliness of mining on the leased premises and is not reasonably susceptible to two meanings. In fact, Freeport does not attempt to give meaning to the provision, arguing instead that it is incapable of having a definite meaning. But Section 6 is not "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Haynes, 720 S.E.2d at 568-69. When considering the same language, albeit in a different context, the West Virginia Supreme Court of Appeals found that the phrase "at the pleasure of" clearly and unambiguously indicates an intent to confer control over the subject matter in question. See Williams v. Brown, 437 S.E.2d 775, 778 (W. Va. 1993) (concluding that the phrase "to serve at the pleasure of the attorney general" clearly indicated "the intent of the Legislature to give the Attorney General unfettered control over the hiring and firing of assistant attorneys general") (emphasis added).

The Court will not find ambiguity where there is none. The Lease's express, unambiguous provision related to the timeliness of development of the leased premises controls the parties' dispute in this case, not an implied duty that might otherwise arise under the law.

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

c.   The Covenant of Good Faith and Fair Dealing Does Not
Apply

Finally, Freeport contends that because Section 6 is a discretionary provision effecting its property rights, the covenant of good faith and fair dealing also applies in this case and requires Harrison to diligently mine the leased premises [ECF No. 43 at 4-6]. "West Virginia law 'implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract.'" Evans v. United Bank, Inc., 775 S.E.2d 500, 509 (W. Va. 2015) (quoting Stand Energy Corp. v. Columbia Gas Transmission, 373 F. Supp. 2d 631, 644 (S.D.W. Va. 2005)). But "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract." Barn-Chestnut, Inc. v. CFM Dev. Corp., 457 S.E.2d 502, 509 (W. Va. 1995) (quotation omitted).

As discussed above, Harrison had contractual discretion to determine when mining on the leased premises should begin. The implied covenant of good faith and fair dealing cannot therefore alter the parties' agreement or require Harrison to commence mining on Freeport's preferred timeline. Moreover, there is no evidence that Harrison exercised its discretion in bad faith.

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

   2.   Section 13 of the Lease Also Prohibits the Application
        of the Implied Covenant

The implied covenant to mine with reasonable diligence is also inapplicable because the Lease requires Harrison to make minimum annual royalty payments regardless of coal production. As a court in this District previously explained,

> Courts have generally imposed an implied duty to [mine] with reasonable diligence only when there is no provision requiring payment of minimum royalties or rentals. This makes sense because minimum royalties or rental payments are designed to ensure that the lessor receives a return on its investment regardless of whether there is actual production, and also to protect the lessee in case production becomes temporarily impossible or unprofitable. Minimum royalties or rentals serve as a substitute for a due diligence provision and extend the lease despite periods of low production or non-production.

Mike Ross, Inc. v. Dante Coal Co., 230 F. Supp. 2d 716, 721 (N.D.W. Va. 2002) (collecting cases).

Here, Section 13 of the Lease requires Harrison to pay Freeport, "as a minimum annual rental on account of coal mined or to be mined hereunder the sum of Four Thousand Dollars ($4,000) for each calendar year during the continuance of this Lease, whether or not Lessee mines any coal during that year. . . ." [ECF No. 39-1 at 6-7]. This provision suggests that the parties anticipated there might not be continuous mining and supersedes the implied duty to mine within a reasonable time.

15

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

Freeport contends that Section 13 does not preclude the application of the implied covenant in this case because the Lease's minimum annual royalty is illusory [ECF No. 39 at 15]. According to it, $4,000 annual payment is not substantial consideration where similar leases today require annual royalties between $20,000 and $250,000.  Id. (citing ECF No. 39-11 at 2). In the Court's opinion, this argument lacks merit.  That Freeport would have requested a higher minimum annual royalty rate if negotiating the Lease today than its predecessor did when negotiating the Lease fifty-six (56) years ago does not render the bargained-for consideration illusory.  Nor does the amount of the minimum annual royalty trigger the implied covenant to diligently mine.

### 3.   Conclusion

Harrison has no implied duty to mine the leased premises within a reasonable amount of time.  Freeport's claim therefore fails as a matter of law and the Court **GRANTS** summary judgment to Harrison on this issue.

### B.   Harrison Has Not Abandoned the Lease

The Court next considers whether Harrison "has abandoned its mineral interest and forfeited its lease by failing to mine the coal within a reasonable time" [ECF No. 39 at 17].  A lessee's

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

action or inaction may trigger termination of a coal lease for
failure to diligently pursue operations.  Christian Land Corp. v.
C. & C. Co._, 422 S.E.2d 503, 507 (W. Va. 1992) (per curiam).
"Abandonment requires both physical abandonment and an intent to
abandon, . . . and depends on the particular circumstances of each
case." Mike Ross, 230 F. Supp. 2d at 722 (citing Christian_, 422
S.E.2d at 503).

Freeport's abandonment claim fails as a matter of law for
three reasons.  First, "the doctrine of abandonment is based on an
implied covenant to exploit within a reasonable time," that does
not apply in this case.  Iafolla v. Douglas Pocahontas Coal Corp.,
250 S.E.2d 128, n.3 (W. Va. 1978).  The Lease authorizes Harrison
to determine mining will begin on the leased premises.  It has not
abandoned the Lease by exercising this right.

Second, Harrison and its predecessors have regularly paid the
$4,000 minimum annual royalty for use of the leased premises [ECF
No. 39-10].[5]  "Absent extraordinary circumstances, a lease of
mineral rights providing for a mineral rental payment cannot be
considered abandoned during its term for failure to exploit the
minerals so long as the minimum rental payments are regularly

---

[5] The evidence demonstrates that Harrison's predecessors have paid the minimum
annual royalty at least since 2015 and Harrison has paid the minimum annual
royalty for the two years it has been the lessee [ECF No. 39-10].

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

tendered." Syl. Pt. 2, Iafolla, 250 S.E.2d at 133. "Minimum royalties or rentals serve as a substitute for a due diligence provision and extend the lease despite periods of low production or non-production. Mike Ross, 230 F. Supp. 2d at 721. Harrison has paid its minimum annual royalty as required by the Lease and there is no indication that it will cease.[6] Thus, here, "where there is no lease requirement of continuous production or due diligence, and where minimum royalty payments are made as required by the lease, there has been no forfeiture or abandonment through non-production." Mike Ross, 230 F. Supp. 2d at 721-722.

Freeport relies on Christian Land Corp. v. C. & C. Co. for the proposition that Harrison can be deemed to have abandoned the Lease despite its annual payments. 422 S.E.2d at 503. But Christian, the only West Virginia case finding abandonment of the coal lease despite the presence of a minimum rental payment provision, is easily distinguishable. There, the lessee coal company's mining permits had been revoked and the lessee had entered a bankruptcy court order relieving it of the obligation to make lease payments or maintain any interest in the property. Id. at 505. Based on these particular facts, the West Virginia Supreme

---

[6] The fact that Freeport may have chosen not to cash Harrison's checks during this litigation does not alter the Court's analysis.

FREEPORT GAS COAL TRUST V.                               1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

Court of Appeals found that the lessee's loss of its mining rights and failure to attempt to regain those rights constituted abandonment of the lease.  Id. at 507-08.  This case, however, presents no similar extraordinary circumstances that could persuade a trier of fact that Harrison has abandoned the Lease. Harrison operates an active coal mine less than five (5) miles from the leased premises and plans to expand its current operations onto the leased premises.  In the meantime, it has paid its minimum annual royalty to extend the Lease.

Finally, Freeport's abandonment claim fails as a matter of law because no reasonable jury could find that Harrison had an intent to abandon the Lease.  Christian, 422 S.E.2d at 503 ("Abandonment requires both physical abandonment and an intent to abandon. . . .").  Although Harrison has no immediate plan to mine the leased premises and has no equipment or personnel stationed there, it has paid minimum annual royalties to Freeport and has paid property taxes on the mineable coal reserves on the property.

Freeport takes issue with the fact that Harrison has not independently evaluated the coal reserves on the leased premises, but Harrison has relied on its predecessor's data to formulate a mining plan for the area at large.  As such, it has expanded the Harrison County Coal Mine towards the leased premises over time

19

FREEPORT GAS COAL TRUST V.                                        1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

and plans to extend the mine onto the leased premises when it becomes practical and economical to do so.  The evidence demonstrates that Harrison desires to mine the coal eventually and its delay in exploiting the leased premises resulted from its overall plan to make use of and extend the life of its asset portfolio long-term.

For each of these reasons, the Court **GRANTS** summary judgment to Harrison on this issue.

## C.   Reformation of the Royalty Rate Is Not Appropriate

Because Harrison has not breached any implied duty or abandoned the Lease, the Court must finally consider whether the Lease's royalty rate should be reformed.  Section 12 of the Lease requires Harrison to pay an eleven cent ($0.11) royalty on every ton of coal mined from the leased premises [ECF No. 39-1 at 6]. Freeport has requested the Court to reform the Lease "to provide a reasonable royalty rate, together with an appropriate escalation factor" because the current royalty rate is unconscionably low [ECF Nos. 1-1 at ¶ 38; 43 at 10-11].

### 1.   No Mutual Mistake

Harrison contends that Freeport's claim fails as a matter of law because the Lease's royalty rate is not based on any mutual mistake of fact [ECF No. 52 at 13-15].  "[A] contract is reformable

20

FREEPORT GAS COAL TRUST V.                           1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

or voidable if it can be shown that the parties mutually erred
about a basic fact that is material to their agreement." McGinnis
v. Cayton, 312 S.E.2d 765, 769 (W. Va. 1984). Freeport seems to
argue that the contracting parties mutually erred about possible
fluctuations in coal prices [ECF No. 43 at 10 ]. It asserts that
the substantial increase in the price of coal between 1965 and
today "at the very least raises the possibility that both parties
were operating under a mistaken assumption." Id. It cites to
McGinnis in support of its argument.

In McGinnis, the parties' entered an oil and gas lease that
required the lessee to pay a one-eighth royalty for any oil
produced and a $100 flat rate annual royalty for any gas produced,
so long as sufficient gas had been produced to justify marketing.
312 S.E.2d at 767. Id. For more than twenty-five years, the
lessee produced no gas under the lease. Id. But, after the lessee
deepened an old gas well for production, the lessor requested a
one-eighth royalty for the gas. Id. The lessee refused and paid
the $100 royalty provided by the lease. Id. The lessee filed
suit, asking the court to reform or void the lease because the
flat-rate gas royalty was no longer commercially reasonable. Id.
The circuit court granted the lessor's motion to dismiss this
claim. Id. The West Virginia Supreme Court of Appeals reversed

FREEPORT GAS COAL TRUST V.                              1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

finding that "the limited awareness of the economic value of natural gas at the time when the contract was drafted raise[d] at least the possibility that both parties were operating under" a mutual mistake.  Id. at 769.

Freeport's reliance on McGinnis is misplaced.  This Court addresses Freeport's reformation claim at a far different procedural posture.  In McGinnis, the WVSCA revered the circuit court's decision to grant the defendant's motion to dismiss, finding that the plaintiff should have been afforded an opportunity to conduct discovery and offer evidence to support its claim. Freeport has had such opportunity here but has put forth no evidence to suggest that the contracting parties were unaware that the price of coal might increase over time.

Moreover, the parties here did not have a "limited awareness" of the value of the resources at stake when they executed the Lease.  The leased premises are part of the Pittsburgh seam which has been mined for centuries and both of the contracting parties were sophisticated entities with experience in the coal industry. Conversely, the lease in McGinnis was more than 100 years old and reflected the outdated practice of paying a small royalty for gas that had been vented into the air rather than sold for profit. "[T]he limited awareness of the economic value of natural gas"

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]

when the contract was executed convinced the WVSCA that there was at least a possibility that the contracting parties had operated on a mutual mistake by assuming that the "the value of gas would remain de minimis."   312 S.E.2d at 767.

Because Freeport has put forth no evidence to support that the Lease or its royalty provision was premised on a mutual mistake of fact, there is no legal basis for reforming the royalty rate in this case.  Even if it could demonstrate a mutual mistake of fact, it cannot rely on this doctrine for reformation of the Lease because it bore the risk of the mistake.

> Where a mistake of both parties at the time a contract
> was made as to a basic assumption on which the contract
> was made has a material effect on the agreed exchange of
> performances, the contract is voidable by the adversely
> affected party unless he bears the risk of the mistake.

Orlandi v. Goodell, 760 F.2d 78, 81 (4th Cir. 1985) (quoting McGinnis v. Cayton, 312 S.E.2d 765, 769 (W.Va.1984) (emphasis in original)).  Under the Lease, Freeport bears the risk of a rise in the value of coal by accepting a fixed royalty for the production of it on the leased premises.  See e.g., id., 760 F.2d at 81 (holding that the coal company lessor bore the risk of mistake that there was no coal on the premises when it agreed to accept a minimum annual royalty payment).  Thus, the doctrine of mutual mistake of fact is inapplicable.

FREEPORT GAS COAL TRUST V.                              1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

    **2.   No Unforeseen Change of Circumstances Constituting Fraud**

Freeport contends that reformation is appropriate because royalty rate is unconscionably low due to price increases and inflation [ECF No. 43 at 10-11].  Contract reformation may become appropriate where a contract, "by virtue of changed circumstances unforeseen by either of the contracting parties become so 'unfair and uneven as to render its enforcement equivalent to the perpetration of fraud upon the lessors.'"  *Iafolla v. Douglas Pocahontas Coal Corp.*, 250 S.E.2d 128, 133 (W. Va. 1978).  However, "[s]uch equitable remedy is not absolute but depends upon whether the reformation sought is essential to the ends of justice."  *Id.* (quoting Syl. Pt 2, *Buford v. Chichester*, 71 S.E. 120 (W. Va. 1911).

Freeport argues that the discrepancy between the Lease's eleven cent ($0.11) royalty rate and the average royalty rate today is evidence of "a genuine issue of material fact that the 1965 royalty rate is unconscionable" [ECF No. 43 at 10].  Although royalty rates have risen over the last fifty (50) years, there is no evidence suggesting that the contracting parties could not have foreseen this change in circumstances.

"Those who contract are not clairvoyant. Commercial marriage,

FREEPORT GAS COAL TRUST V.                                    1:21CV123
HARRISON COUNTY COAL RESOURCES, INC

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 37] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 38]**

like all other is laden with uncertainty." Orlandi v. Goodell,
760 F.2d 78, 81 (1985).  Price fluctuations and inflation are
ordinary parts of this uncertainty.  As such, they are not so
unforeseeable that their combination amounts to a fraud upon
Freeport in this case.  The original lessor freely negotiated for
the Lease's royalty rate, and it would be inappropriate to for
this Court to make a new contract for them.  Summary judgment is
granted to Harrison on this issue as well.

### IV.  Conclusion

For the reasons discussed, the Court **GRANTS** Harrison's motion
for summary judgment [ECF No. 38] and **DENIES** Freeport's motion for
summary judgment [ECF No. 37].

It is so **ORDERED.**

The Clerk shall enter a separate Judgment Order in favor of
Harrison and transmit copies of both Orders to counsel of record
by electronic mean.

Dated: March 20, 2023

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA